### BAILEY v. CHAMBERLAIN et al.

(Supreme Court, General Term, First Department. February 17, 1893.)

1. APPEAL—REVIEW—INTERLOCUTORY DECREE.
   Where an interlocutory decree is entered adjudging that the statute of limitations is no defense to the action, and a final decree is afterwards rendered in favor of defendant, the interlocutory decree will not be reviewed on appeal, since the defendant is not aggrieved thereby.

2. EVIDENCE—WEIGHT AND CONCLUSIVENESS.
   Where the only evidence that bonds delivered to plaintiff's assignor and sold by him were his property is the testimony of a witness who pretends to have a very distinct recollection of words used 20 years before in a conversation in which he had no personal interest, and the order for the bonds written at the time by said witness states that they belonged to the other party to the transaction, a finding that the bonds were not the property of plaintiff's assignor is proper.

Appeal from special term, New York county.

Action by Isaac H. Bailey, as assignee of the estate and effects of Daniel Drew, a bankrupt, against Daniel Drew Chamberlain, Emma W. Chamberlain, the Farmers' Loan & Trust Company, as trustee, and William H. Drew, individually, and as executor of the last will and testament of Daniel Drew, deceased. An interlocutory decree was entered, and also a final decree, from which both parties appeal. Affirmed.

For former report, see 2 N. Y. Supp. 212.

Argued before VAN BRUNT, P. J., and O'BRIEN and LAW-RENCE, JJ.

C. C. & S. F. Prentiss, (Geo. W. Cotterill, of counsel,) for plaintiff.
McMahon & Handley, (Denis McMahon, of counsel,) for defendants.

VAN BRUNT, P. J. We do not understand precisely the theory as to the practice upon which these decrees were entered. A judgment having been granted in favor of the plaintiff by the original decree, necessarily the plea of the statute of limitations was overruled; and to make an express adjudication upon that point seems to be unnecessary, and improper practice, which is apparent from the result of this action, as it appears that, notwithstanding the plaintiff has succeeded upon the preliminary question, yet he was defeated in the final result, and it was immaterial what the court decided in respect to the statute of limitations; and, as a party can only appeal where he is aggrieved, it is difficult to see why the court should be called upon to consider moot questions.

This action was brought by the plaintiff as assignee in bankruptcy of one Daniel Drew. After many immaterial allegations, the complaint alleged that some time prior to March, 1876, the said Drew made certain promissory notes or obligations, whereby he promised to pay to the defendant Chamberlain the sum of $118,000, or thereabouts, which notes or obligations had matured and become payable before the commencement of this action; and that in or about the month of October, 1873, the said Drew transferred and delivered certain bonds or securi-

ties, of the par value of $168,000, and then of the actual market value of $118,000, to said Chamberlain, as collateral security, and not otherwise, for the payment of said promissory notes or obligations. Then followed certain allegations justifying the making of the Farmers' Loan & Trust Company a party, and an allegation that said bonds and securities, or the proceeds thereof, were still in the possession or under the control of said Chamberlain, except the portion thereof transferred to the Farmers' Loan & Trust Company; and judgment was prayed that said Chamberlain render to the plaintiff, as assignee as aforesaid, a full and true account of all and singular the bonds and securities received by him from said Drew as collateral security as aforesaid, and of the proceeds and avails of the same, and that sufficient of said bonds and securities to pay any sum which might be found due on said promissory notes or obligations be sold, and the balance thereof be transferred and delivered to the plaintiff as assignee. The defendant answered, in substance, that the note for $118,000, mentioned in the complaint, was given on the 4th of April, 1872, on a settlement of transactions between said Drew and said defendant, which settlement was for a balance due on a previous note of $100,000, and the interest due thereon, and a $30,000 loan, and the interest due thereon, amounting in all to about $175,000, in settlement of which said Drew turned over to the defendant, by absolute transfer, 80 bonds of the Albany & Susquehanna Railway Company, and gave the note of $118,000; and that, subsequent to said settlement, said Drew borrowed of the defendant said 80 bonds, and used the same for his own purposes, so that in 1872 he owed the defendant the sum of $118,000, and interest accruing thereon, and also the actual value of said 80 bonds loaned to him as aforesaid, the said value in 1872 being about 80 to 85 per cent. of the par value; and that said Drew, being so indebted, transferred the securities mentioned in the complaint to the defendant in payment of such indebtedness, and not as collateral security; and that, since such transfer, the defendant has owned and held the securities and dealt with the same as his own property. The defendant also set up the 6 and 10 years, statute of limitations, and also the 2-years statute created by the bankruptcy act. The learned court below held that the statute of limitations did not apply, and that these securities were held as collateral security, not only for the $118,000 note and the 80 Albany & Susquehanna bonds, but also for the indebtedness of $30,000; and an interlocutory judgment was entered to this effect; and it was referred to a referee to ascertain, determine, and report to this court the amounts received by Chamberlain as interest or income on said securities, and for all payments received by him with reference to and interest upon said promissory notes and 80 bonds and said $30,000 loan. The decree further provided that, in case it should be found that there was due to the defendant Chamberlain an amount greater than the value of the securities, he should specify that in his report, and the data and method by which he arrived at it. The referee found that the amount due to Chamberlain in excess of the value of the securities in dispute amounted to $141,000. Thereupon final judgment was entered in favor of the

defendants, and these appeals are taken from both the interlocutory and final judgments.

In view of the final result, it is not at all necessary to discuss the statute of limitations, as it is entirely immaterial whether it applied or not; and even if the court below was erroneous in its rulings in respect thereto, which this court does not undertake to determine, the defendant has not been aggrieved thereby. We have read with reasonable care and attention the evidence which has been introduced upon the trial of this action, and have also considered the arguments in support of the proposition which has been urged upon this court that there was no indebtedness of $30,000, nor was the assignor of the plaintiff in any way responsible to Chamberlain for the 80 Albany & Susquehanna bonds; and we see no reason to differ from the conclusion arrived at by the court below, except as to the indebtedness of $30,000. We find no evidence to support the conclusion of the learned court in respect to that item. No such claim is presented by the pleadings. The defendant Chamberlain, in his answer, expressly states that in or about April, 1872, the said Drew had an accounting with the defendant for said note of $100,000, and the interest thereon, and for this loan of $30,000, and the interest thereon, and there was found to be due to the defendant from said Drew on said matters about the sum of $175,000, in payment for which the said Drew gave to the defendant 80 bonds of the Albany & Susquehanna Railway Company, of the par value of $1,000 each, but of the actual value of $67,000, and for the balance said Drew gave to the defendant another promissory note, for $118,297.54, payable on demand, with interest at 7 per cent.; and that subsequently said defendant loaned to said Drew the 80 bonds, which the latter used for his own purposes, and subsequently thereto, and in 1872, or the early part of 1873, said Drew transferred to the defendant, in payment of such note of $118,297.54, and the interest due thereon, and of the amount of said 80 bonds which he has borrowed, the securities which form the subject-matter of this action. There is no claim whatever made that, at the time of the transfer of these securities, the loan of $30,000 was outstanding. On the contrary, the express allegation is that the original note of $100,000, and the indebtedness of $30,000, with the accrued interest thereon, was paid by the making of the note now outstanding of $118,000, and the transfer of the Albany & Susquehanna bonds. Therefore the loan of $30,000 was extinguished, as a result of this transaction. Neither is such claim substantiated by the evidence. All the evidence which has been introduced in reference to the $30,000 loan is entirely in harmony with the allegation of the answer that that indebtedness was wiped out at the time of the settlement, when the 80 bonds were transferred, and the $118,000 note given; and, in view of the formal declaration of the defendant upon this point, and the other evidence in the case, no other conclusion can be arrived at.

It is claimed, however, by the plaintiff that the defendant Chamberlain has no claim because of the transaction relating to the 80 Albany & Susquehanna bonds, for the reason that those bonds never belonged to the defendant Chamberlain, but were always the property of Drew,

having been deposited by him with the defendant as security for his indebtedness to him; and this is the purport of the testimony of the witness Boyd, who pretended to have a very vivid and distinct recollection of words used in conversations had about 20 years before, in which he had no personal interest; and his recollection is so vivid that these bonds were given as security upon the loan that it tends to throw discredit upon his whole narrative, and but little weight should be given to the same, unless supported by other circumstances.   We think that it was the clear intention of Drew, at the time he transferred the bonds and securities in question, to secure Mr. Chamberlain for whatever indebtedness he (Drew) owed to him, and that there was an indebtedness arising out of the transaction relating to the 80 bonds.   That these bonds were given to Mr. Drew by Chamberlain, sold by Mr. Drew, and the proceeds received by Drew, seems to us to be satisfactorily established, (notwithstanding the testimony of Boyd) by the written order, which we think was written by Mr. Boyd, authorizing the giving up of. the bonds by Boyd, Townsend & Co.:

"Deliver to Daniel Drew $80,000 of the first mortgage bonds of the Albany & Susquehanna Railway Co., in your hands, belonging to me, at my risk.
    [Signed]                                    "Daniel Chamberlain."

Would such an order be given if Chamberlain was surrendering to Drew his own property?   Would Boyd have written such an order if he supposed that these bonds belonged to Mr. Drew?   Chamberlain says, "Belonging to me," and they are to be delivered " at my risk,"—language absolutely incompatible with the idea that they actually belonged to Mr. Drew, and that Chamberlain was not the owner thereof. After this long lapse of time, it seems to me that more weighty testimony than that of Boyd is needed to overcome the solemn declaration of a writing whose recollection cannot fail, and to which additions out of the imagination cannot be made.   Therefore this indebtedness existed at the time of the transfer of these securities; and it being the object of Drew to secure Chamberlain for that which he owed him, and it being the object of Boyd in getting these securities, as he testifies, to protect Mr. Chamberlain, in what would the protection .consist if these $80,000 of bonds were to be left out of the calculation, and only the $118,000 secured?   The thing to be done would only have been half accomplished, and Mr. Boyd gives us the idea that it was completely effected.   The whole tenor of the testimony of Boyd is in respect to his solicitude for the interest of Chamberlain, — to see that he was protected against Drew's indebtedness; and although he attempts to whittle this down by the narration of an interview with Drew, in which apparently precise language is given, after the lapse of 20 years, yet undoubtedly it was the intention of Drew that Chamberlain should be protected, and these securities were given to protect whatever indebtedness might be due from Drew to Chamberlain.   But it may be said that if Boyd is not mistaken in reference to the fact that these securities were transferred as collateral, and not in payment of the indebtedness, and that Chamberlain's claim in that respect is unfounded, why should not the same weight be given to Boyd in respect to these 80 bonds?   For the simple

reason, that the claim of Chamberlain in respect to these securities being given in payment is not supported by the written and admitted facts. If the note was paid, why was it not surrendered? The $100,000 note was paid, and disappears. The $118,000 note still exists. It is not the practice among business men, after a note is paid, for the creditor still to retain the paper; and that is the reason why we think that Chamberlain is mistaken in his claim that these securities were given in payment of the indebtedness. Upon the whole case, therefore, basing our judgment upon the documentary evidence in the case, we are of opinion that the securities in question were deposited as collateral to the indebtedness of Drew to Chamberlain, and that such indebtedness consisted in the $118,000 note, and the liability for the $80,000 Albany & Susquehanna bonds. For the reasons above stated, we think the court erred in including in the indebtedness to Drew the $30,000 loan, as no such claim was presented upon the pleadings, and does not seem to be supported by the evidence. In view, however, of the report of the referee in regard to the condition of the accounts as between Chamberlain and the assignee of Drew, this makes no difference in the final result. The deficiency, as found by the referee, amounted to $141,000. The amount of the $30,000 loan was about $60,000, thus leaving a balance upon the whole account due to Mr. Chamberlain. We think, therefore, that the judgment, so far as it dismissed the complaint, should be affirmed, but without costs. All concur.